VINSON, Appellant,

v.

AARP FOUNDATION, Appellee.

[Cite as *Vinson v. AARP Found.* (1999), 134 Ohio App.3d 176.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–1540.

Decided Sept. 28, 1999.

*Cloppert, Portman, Sauter, Latanick & Foley* and *Frederic A. Portman,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Patria V. Hoskins,* Assistant Attorney General, for appellee.

PEGGY BRYANT, Judge.

Appellant, Eileen Vinson, appeals from a judgment of the Franklin County Common Pleas Court, which affirmed a decision of the Ohio Unemployment Review Commission ("commission") denying her unemployment compensation benefits.

Appellant began working for appellee, AARP Foundation ("AARP") in March 1996. She continued working there until August 9, 1996, when she left to begin a

new job as a receptionist at Faith Mission. She worked at Faith Mission from August 12, 1996 to November 1, 1996, when she separated from her employment, allegedly for improperly taking a telephone message.

On November 18, 1996, appellant applied for unemployment benefits. Because Faith Mission is a noncovered employer, appellant's employment with AARP was considered in determining her eligibility for benefits. An initial determination from the administrator of the Ohio Bureau Employment Services found that appellant had quit her job with AARP without just cause and was not entitled to benefits. Appellant appealed the decision, affirmed on reconsideration, to the commission. A hearing was held on March 11, 1997, at which both appellant and AARP were represented by counsel. After the hearing, the board affirmed the administrator's reconsidered decision that appellant had quit her job without just cause. The commission disallowed appellant's subsequent application to institute a further appeal. On appeal to the Franklin County Common Pleas Court, that court affirmed the commission's decision to deny benefits.

Appellant timely appeals, assigning the following error:

"The trial court erred when it found that appellant quit employment without just cause."

■ While a reviewing court in cases of this nature is not permitted to make factual findings or to determine the credibility of witnesses, it has the duty to determine whether the board's decision is supported by evidence in the record. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207. Reviewing courts may reverse "just cause" decisions if they are unlawful, unreasonable, or against the manifest weight of the evidence. *Id.;* R.C. 4141.28(O).

■ While an employee who quits work without just cause is not entitled to unemployment compensation, an employee who quits work with just cause is entitled to such benefits. R.C. 4141.29(D)(2)(a). "Just cause" has been defined as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19, 19 OBR 12, 14, 16, 482 N.E.2d 587, 589, 591, citing *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12, 73 O.O.2d 8, 9, 335 N.E.2d 751, 752. Whether just cause exists depends on the unique factual circumstances of the particular case. *Id.* The claimant has the burden of proving entitlement to unemployment compensation benefits under the statutory provisions, including the existence of just cause for quitting work. *Id.; Shannon v. Bur. of Unemp. Comp.* (1951), 155 Ohio St. 53, 44 O.O. 75, 97 N.E.2d 425.

■ Generally, an employee who terminates employment in order to accept other employment quits without just cause and is not eligible for unemployment

benefits, even if the employee leaves for a better paying job. *Radcliffe v. Artromick Internatl., Inc.* (1987), 31 Ohio St.3d 40, 41, 31 OBR 148, 149–150, 508 N.E.2d 953, 954; see, also, *Cardani v. Olsten Home Healthcare* (July 31, 1998), Tuscarawas App. No. 97AP120083, unreported, 1998 WL 549374; *Dickson v. Thousand Trails Resorts* (Nov. 7, 1988), Clinton App. No. CA88–06–008, unreported, 1988 WL 120780; *Cooper v. Ohio Bur. of Emp. Serv.* (Feb. 14, 1979), Summit App. No. CA9063, unreported. But, see, *Young v. Tortilla Flats* (1987), 37 Ohio App.3d 41, 523 N.E.2d 519 (deciding the issue prior to the opinion in *Radcliffe, supra* ).

Agreeing generally that an employee who quits to accept a better job quits without just cause, appellant nonetheless contends that her case is distinguishable because her job at AARP was intended to facilitate her finding another job elsewhere. Indeed, her enrollment agreement with AARP specifically stated that the program was for the "basic purpose of helping [her] to prepare for work." Appellant thus asserts that quitting her job at AARP was the fulfillment of her goals, and was done with just cause.

■ While the legislature has created some exceptions that alleviate the disqualification caused by quitting without just cause, see R.C. 4141.291, it has not enacted an exception encompassing appellant's argument. See, also, *Radcliffe, supra.* Until the legislature creates such an exception, this court is constrained by the choices the legislature currently has made. Contrary to appellant's argument, the statutory provisions do not allow a "job training" exception to R.C. 4141.29(D)(2)(a). See *Nagle v. Bd. of Review* (Jan. 4, 1979), Mahoning App. No. 78–C.A.–120, unreported (holding that "the question of whether a person who quits his or her job to obtain a better paying job which does not materialize is entitled to unemployment benefits is a policy making decision that is within the jurisdiction of the state legislature").

Accordingly, because appellant quit her job with AARP to accept a better paying job, she quit without just cause. Pursuant to R.C. 4141.29(D)(2)(a), she is disqualified from receiving unemployment benefits. Accordingly, appellant's single assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DESHLER, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

I respectfully dissent.

AARP Foundation does vocational training. The whole purpose of AARP Foundation's efforts is to help people resume unsubsidized employment. Both AARP Foundation and the individuals it assists view a transition to regular employment as a success. Thus, an individual does not really *quit* employment with AARP Foundation any more than a person *quits* college when the person graduates. The goal has been obtained and the person's activity is modified.

Under the circumstances, I believe that Vinson modified her employment status with just cause. She achieved the goal being sought both by her and by AARP Foundation. She should not be punished by the Ohio Bureau of Employment Services for taking regular employment after completing job training. Indeed, the irony that a so-called "bureau of employment services" will deprive a person of benefits because the person successfully completed an employment training effort is truly striking.

Because I believe that Vinson modified her employment status with AARP Foundation with just cause, I would grant her unemployment benefits. The majority of this panel reaches a different result. I, therefore, dissent.